UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 728 |
| v. | Judge Virginia M. Kendall |
| THOMAS VIVIRITO | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully asks the Court to sentence defendant THOMAS VIVIRITO to a Guidelines sentence of 240 months' imprisonment and a ten-year term of supervised release, including the conditions specified in the Presentence Investigation Report ("PSR").

## I.    Offense and Relevant Conduct

As described in defendant's Plea Agreement, the PSR, and the Government's Version of the Offense ("GVO"), from 2018 to 2019, defendant—who was approximately 23 years old at the time—persuaded and attempted to persuade *over a dozen* minor girls—including girls as young as 12 years old—to send him child pornography. Using social media and messaging applications, defendant preyed on these children. Defendant lied about his own age, sent explicit messages about wanting to meet in person and to "f***" the minors, as well as images of his penis and videos of him masturbating, and requested and received videos and images of his victims engaging in sexually explicit conduct—per defendant's instructions. Defendant not only screen-recorded and saved numerous videos that his victims sent

1

over Snapchat, but also possessed other child pornography depicting exceedingly young children, including prepubescent minors, minors who had not attained 12 years of age, and infants or toddlers, which defendant acknowledges to include sadistic and masochistic pornography of real children. Specifically, defendant possessed at least 19 videos and 1005 images of child pornography. *See* Dkt. 125 at 8-9; PSR at ¶¶ 6-8, 14-27.

Example messages and images:[1]

For example, in July 2018, defendant messaged Minor A, who was 12 years old at the time and resided in Iowa, that defendant was "coming to Iowa Friday night" and "Was gonna bring u 10,000$????????" Later that month, he sent messages reading in part, ". . . I wanna f*** u," "Can we," "What's the oldest age you'd f***," and "Can

---

[1] Additional exchanges between defendant and various victims are appended to the Government's Version of the Offense and referenced therein.

At sentencing, the government plans to show the Court example videos and images that defendant received from his victims and/or possessed on his devices. The government will make the disc in question available to the defense for review prior to the sentencing hearing.

Among the files on the disc are: (1) an example video of Minor A, bearing file name "IMG_2737," and depicting Minor A penetrating her vagina with a brush; (2) an example video of Minor A, bearing file name "IMG_2739," depicting her inserting the handle of a hairbrush into her anus, and also capturing the recording of a chat from defendant reading, "Baby mmmmm u take it so f***n good im f***ing your ass"; (3) an example video of Minor C, bearing file name "IMG_3244," depicting her exposing her bare buttocks, vagina, and breasts; (4) an example video of Minor C, bearing file name "IMG_3245," depicting her inserting her fingers in her vagina; (5) an example video of Minor B, bearing file name "IMG_4426," depicting her with her fingers in her vagina and masturbating; (6) an example video of Minor B, bearing file name "IMG_4430," depicting her defecating; (7) an example video of Minor D, bearing file name "IMG_3582," depicting her wearing a white thong and touching herself over her underwear; and (8) an example video of Minor D, bearing file name "IMG_3590," depicting her wearing a white thong with her vagina exposed and touching herself, in addition to multiple other videos and images of other minor victims from defendant's phone and laptop.

I facef*** u . . . ." He also sent messages threatening, ""I'll expose if u leave me," "I'll be dead in a few hours so you wont ever have to deal with me anymore," and "U wont care that I'm dead right?" On July 25, 2018, Minor A used Snapchat to send defendant multiple videos, which defendant screen recorded, depicting Minor A spreading her legs apart and touching her vagina, penetrating her vagina and anus with her fingers, and penetrating her vagina and anus with a hairbrush. *See* GVO at 2-3.

In August 2018, defendant also exchanged messages with Minor C and Minor D, who were 15 years old at the time. Defendant sent messages to Minor C directing her to send images and videos of herself engaged in sexually explicit conduct and offering to pay "20 [dollars] a pic." Defendant explicitly instructed Minor C to show "Everything. Pussy , tits, asshole. Gag on your fingers." That month, defendant received multiple images and videos from Minor C, which defendant screen recorded, depicting Minor C inserting her fingers in her vagina, spreading apart her labia, and exposing her labia and breasts. Defendant sent similar messages to Minor D directing her to record videos of herself masturbating and send them to defendant, in exchange for money and gifts. Defendant also messaged Minor D, who lived in New York, "I did book a flight though," "Are u close to the buffalo Niagara airport[?]," "Imma come by when I'm in the buff," "And beat tf outta the dudes u wit," and "I owe u a punt in the cu**." *See* GVO at 4, 7.

Also in August 2018, defendant exchanged sexually explicit messages with three minor females residing in Indiana, and ranging in age from 13 to 14, and went so far as to attempt to meet them in-person at a hotel, and to in fact meet them in-

person on another occasion. For example, on August 4, 2018, defendant wrote, "We not even that far . . . ," "Would u be able to sneak out," and "Can I come get you omfggggg." Several hours later, he and one of the minors exchanged messages in which she described the hotel room in which she and another of the girls were staying, and defendant wrote, in sum, that he had driven to the hotel and was in the parking lot preparing to come up to the room. The girls later messaged that they were "scared" and defendant responded, "Dude no it won't be weird like let me show u." Later the same month, defendant exchanged messages with another of the minors discussing defendant bringing the girls Juul e-cigarettes in return for oral sex. Defendant wrote, "Ight bet but like if imma do this than I'm only giving the juuls after that shit actually does happen." Defendant and the minors did in fact meet in person in defendant's car at a gas station in Indiana, and afterward, one of the victims messaged defendant, "There was no point to not give us the juuls just bc we didn't give you top." Defendant responded in part, "That's not why I didn't give them to you." *See* GVO at 8-9; PSR at ¶¶ 30-31.

Between August and October 2018, defendant also enticed Minor B, who was 12 years old at the time, to record and send defendant child pornography. Among other things, defendant—who claimed he was 16 years old—sent to Minor B through Snapchat a video of himself masturbating, and Minor B sent to defendant a video of her penetrating her vagina with her fingers and masturbating. Minor B also sent to defendant, through Snapchat, other images and videos depicting Minor B pulling

apart her labia with her fingers, inserting her fingers in her vagina, and exposing her vagina. *See* GVO at 6.

In late October and early November 2018, defendant continued messaging and grooming Minor C, sending messages such as, "Can u be a naughty slut for daddy rn bby," "Can u spread legs open," "Daddy wants to lick all of kitty's yummy tight holes," "I wanna push u up against the wall and f*** u kitten????" and "Mmmm would u be a good girl and deepthroat daddy baby????????," as Minor C sent several image files in response. *See* GVO at 5.

Also, in late November 2018, defendant exchanged messages with another minor victim, who was approximately 14 years old at the time, apparently attempting to make plans to meet in-person at a shopping mall and offering increasing amounts of money for the 14-year old to perform oral sex on defendant. Defendant also sent the 14-year old messages reading, "Can I show u sum real quick," "It's my dick," and "I'm just showin u it got big asf," along with an image file. *See* GVO at 10.

<u>Ongoing Criminal Conduct After State Charges</u>

In December 2018, the mother of a 14-year old victim reported to law enforcement that her daughter was engaging in sexually explicit communications with an unknown male know to her daughter as "Tommy V." Dkt. 1 at ¶ 14. A search of the 14-year old victim's cell phone revealed explicit messages exchanged with "Tommy V," who was later identified as defendant. Their communications included messages in which defendant requested nude photos of the 14-year old victim, sent a photo of his exposed erect penis, and asked the victim to skip school to meet him in

5

person. *Id.* at ¶¶ 15-16. The victim also reported that "Tommy V' was exchanging similar messages with several of her friends in eighth grade. *Id.* at ¶ 16; *see also* PSR at ¶ 85.

Local law enforcement arrested defendant later that month, and he was charged with unlawful grooming in the Circuit Court of Will County, Illinois. PSR at ¶ 85; Dkt. 1 at ¶¶ 11, 14-20. Notwithstanding the pending charge, as well as state bond conditions that prohibited defendant from using the Internet or social media, defendant continued to use the Internet and social media to send sexually explicit messages to minor victims. *See* GVO at 7-8; Dkt. 1 at ¶¶ 11-12, 20-21, 38-48.

For example, in January 2019, within a month of his arrest, defendant sent a message to a 13-year-old victim, reading, "Im the only one who gets to spit inside your yummy tight asshole . . . ." *See* GVO at 11. Also, in April 2019, defendant exchanged messages with another 13-year old minor victim, asking her to show defendant "[y]our pussy" and "bare tits;" commenting, "Im gonna cum for u on vidchat tn bby," "I cant wait to f*** you," and "Im gonna punish you;" and making specific demands about videos apparently sent to defendant, such as, "Show daddy that asshole bby," "Long videos bby," "Can daddy hear u moan loud asf," "Omfgg spr[e]ad legs open mami," and "Can u f*** ur pussy with that black dildo." Later on, defendant repeatedly demanded that the minor victim call or Facetime defendant and threatened to slit his wrist and kill himself otherwise. *See* GVO at 11-12.

Also, in or around June 2019, apparently believing that Minor A was in a relationship with someone over the age of 18, defendant sent messages to Minor A

6

threatening to report the relationship to the police, commenting that Minor A's "life will be ruined," that "The police are coming right to u lol," and that defendant could "literally save you from 3 years in juvenile ha." *See* GVO at 3.

Federal charges

In September 2019, defendant was charged by complaint in the present case with possession of child pornography (Dkt. 1). Defendant was later indicted for sexual exploitation of a minor, in violation of Title 18, United States Code, Section 2251(a) (Count 1); enticement of a minor, in violation of Title 18, United States Code, Section 2422(b) (Count 2); receipt of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(A) (Count 3); and possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Counts 4 and 5). Dkt. 95.

On March 2, 2022, defendant pleaded guilty to Count 3, and stipulated to other offenses, pursuant to a plea agreement. Dkt. 124-125. Dr. Marc Martinez recently conducted an updated psychosexual examination of defendant, the report of which is pending, and expected to be provided to the parties and the Court prior to sentencing.

## II.    The PSR and Advisory Guideline Calculations

The government agrees with and has no objections to the Guidelines calculations set forth in the PSR.

<u>"Sexual Contact" Enhancement</u>

With respect to Count Three, Stipulated Offense One, and Stipulated Offense Two, the government agrees with the Probation Office that the offense level is subject to the two-level enhancement under Guideline § 2G2.1(b)(2)(A), because the offense involved sexual contact (Minor C inserting her fingers in her vagina and spreading apart her labia; Minor A touching her vagina and penetrating her vagina and anus with her fingers; and Minor B penetrating her vagina with her fingers and masturbating). *See* PSR ¶ 46; *United States v. Shea*, 493 F. App'x 792, 796 (7th Cir. 2012) (explaining that defendant's "demands that the victims touch themselves sexually . . . warranted a 2-level increase for the commission of sexual contact" under Guideline § 2G2.1(b)(2)(A)); *United States v. Raiburn*, 20 F.4th 416, 422-24 (8th Cir. 2021) (holding that the plain meaning of "sexual contact" under the Guideline includes masturbating, as the intentional touching of "any person" includes a person touching himself or herself); *United States v. Pawlowski*, 682 F.3d 205, 211-13 (3d Cir. 2012) (same); *United States v. Shafer*, 573 F.3d 267, 272-74 (6th Cir. 2009) (same).

<u>"Sadistic/Masochistic Conduct" Enhancement</u>

With respect to Stipulated Offense One, the defense contests the application of the enhancement under Guideline § 2G2.1(b)(4)(A) for the involvement of material portraying sadistic or masochistic conduct, citing *United States v. Johnson*, 784 F.3d 1070 (7th Cir. 2015). *See* Dkt. 125 at 12; Defendant's Version of Offense ("DVO") at 4-5; Dkt. 134 at 7-9.

In *Johnson*, the Seventh Circuit explained that the applicability of Guideline § 2G2.1(b)(4)(A) turns on whether a given image would objectively be considered sadistic or masochistic, as opposed to whether the depicted minor was subjectively humiliated or in pain. *See* 784 F.3d at 1074-75. The court further explained that sadistic and masochistic conduct does not necessarily require violence, physical pain, and/or suffering, but also includes purposefully degrading and humiliating sexual gratification. *See id.* at 1074; *see also United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999). The image at issue in *Johnson* depicted a 12-year old minor inserting the handle of a screwdriver into her vagina, and the Seventh Circuit concluded that in light of the minor's young age, as well as the "potentially violent connotations readily associated with a workshop tool such as a screwdriver," the enhancement applied. The Court further explained:

> We would not go so far as . . . [to suggest] the self-penetration by a minor of a foreign object would always be violent or sadistic. . . . [C]ertainly there are circumstances where self-penetration by a foreign object would be within the realm of sexual exploration or self-pleasuring . . . . Notwithstanding this, we agree that on these facts, the image connotes violence of a sort that would likely appeal to a sadistic audience.

784 F.3d at 1075.

In the case at hand, the minor victim in question (Minor A) was also only twelve years old, and penetrated her vagina and anus using the handle of a hairbrush. In light of the victim's age, the ways in which the foreign object was used, and Minor A's and defendant's communications around this time, the videos in question similarly connote objectively sado-masochistic conduct. Defendant contends that "it does not appear . . . that [defendant] requested Minor A penetrate herself

vaginally or anally with the handle of a hairbrush," and draws a distinction between the handle of the hairbrush ("a common household item") here from the handle of the screwdriver ("a workshop tool") in *Johnson*. DVO at 4-5. Defendant also claims that anal penetration using the hairbrush is not sadomasochistic conduct *per se*, and could constitute "sexual exploration and self-pleasuring, even amongst minor individuals." *Id.* at 5.

Taking defendant's arguments in turn, however: Even without specific requests from defendant for Minor A to use the hairbrush, their communications just the day before include numerous aggressive and threatening messages by defendant (*e.g.*, ". . . I wanna fuck u," "Plz do insta thing lol," "[Minor A's purported adult boyfriend] could get locked tf up????," "Don't leave," "I'll expose if u leave me," "Better warn him he Boutta go to jail") even as Minor A repeatedly asked defendant to leave her alone ("Stop texting me," ". . . now leave me the f*** alone," "There's no way in hell I'd ever get with you," "Leave please," "Stay the f*** outta my life"). *See* Ex. A to GVO. In this context, while a hairbrush may not have the same violent connotations as a screwdriver, it remains a foreign object that was inserted both anally and vaginally by a mere twelve-year old being pressured and exploited by an adult.

In addition, while Minor A sent the videos over Snapchat, which is frequently used to send "self-destructing" messages and videos (*see* Dkt. 1 at 5), defendant screen-recorded the videos, preserving them—apparently without Minor A's knowledge—for his repeated viewing and gratification. *Cf. United States v. Meschino*, 643 F.3d 1025, 1030 (7th Cir. 2011) (affirming application of four-level

sadistic/masochistic conduct enhancement under §2G2.2(b)(4) where although defendant "never specifically sought images of this nature," he "looked at it, possessed it, and stored it," and could thus "be held fully culpable for possession of this particularly harmful form of child pornography").

Thus, the videos of Minor A involved objectively painful and humiliating acts of sexual gratification, qualifying for the enhancement under § 2G2.2(b)(4)(A).[2] *See United States v. Sanchez*, 30 F.4th 1063, 1075 (11th Cir. 2022) (affirming application of sado-masochistic conduct enhancement where defendant had 14-year old minor make videos of herself inserting toothbrush into her vagina, which "[a]n objective viewer could reasonably find . . . was painful and humiliating"); *United States v. McGavitt*, 28 F.4th 571, 576 (5th Cir. 2022) (concluding that objective observer of video of child, age 12 or 13, penetrating herself with a plastic hairbrush handle, "would perceive the conduct depicted in the video as causing [the minor victim] physical or emotional pain contemporaneously with the image's creation," in light of the child's age and the object used).

*       *       *

With the above-discussed enhancements, and the others set forth in the PSR, the adjusted offense level of Count Three is 38, of Stipulated Offense One is 42, and of Stipulated Offense Two is 38. Applying the grouping rules, the combined adjusted offense level is 45, which is reduced by 3 levels for acceptance of responsibility for a

---

[2] As noted in footnote 1 *supra*, the government will have the videos available on disc for the Court's consideration at sentencing.

total offense level is 42. Combined with defendant's criminal history category of I, this results in a range of 360 months to life, and thus a Guidelines sentence of 240 months (the statutory maximum). Defendant also is subject to a mandatory minimum term of imprisonment of five years. PSR at ¶¶ 42-77, 82, 166-168.

## III. The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant A Sentence at the Low End of the Guidelines Range

For the following reasons, the government respectfully submits that the Guidelines sentence of 240 months' imprisonment is sufficient, but not greater than necessary, to acknowledge the seriousness of the offense, provide just punishment of defendant, deter him and others from additional criminal conduct, and protect the public from further crime.

### A. The Seriousness of the Offense, and the Need for Just Punishment

It is impossible to overstate the seriousness of defendant's conduct and the need for just punishment. Victim by victim, and message by message, defendant groomed and attempted to groom over a dozen young girls over social media, not only sending explicit messages and images, but also manipulating, pressuring, and enticing them to send him pornographic images and videos of themselves. As the Probation Office has recognized, this was not a one-time lapse in judgment, but rather, a pattern of criminal exploitation of minors that defendant continued to pursue even after being interviewed by law enforcement in 2017, and after being charged with grooming in 2018. *See* PSR at ¶¶ 83, 85. Moreover, as the excerpted messages (appended to the Government's Version) demonstrate, defendant exploited his victim's vulnerabilities and fears, offering money or gifts in exchange for

12

pornographic images and videos, and at times going so far as to threaten to kill himself and/or to call the police on his victims when they tried to break off contact with him.

Furthermore, defendant screen-recorded and saved his victims' videos and photos, in addition to amassing other child pornography downloaded from the Internet. Congress and the courts have repeatedly recognized the recurring destructive impact that the possession of child pornography has on victims. *See* Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121 (codified at 18 U.S.C. § 2252A), S. Rep. No. 104-358, 1996 WL 506545, § 2(2) (Aug. 27, 1996) ("Congress finds that … where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . ."). The seriousness of defendant's conduct, and the trauma he has inflicted on his many victims, are illustrated by the victim impact statements attached to the GVO and PSR (and excerpted below).[3] For example:

- "It is as if this child has a huge burden that she has to carry, and all of her energy goes into carrying that burden, so she has less energy for everything else in life. . . . My child was in no way comfortable communicating online with an adult, especially a stranger. She is afraid of the internet, and what she knows is out there." Ex. J to GVO at 40.

- "My childhood innocence was stolen and continues to be exploited on a daily basis by strangers. Knowing that I cannot retrieve the photos or videos, nor can I remove them from the internet . . . makes me feel helpless and powerless. Ex. K to GVO at 45.

---

[3] The government also expects that other victims will submit or make statements at sentencing.

- "Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood.... Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel safe and have a chance to heal/recover . . . These people need to be punished for taking away a major part of my childhood and sense of security. Ex. L to GVO at 1.

- "[Our daughter] will forever have the stigma and branding of someone's sexual object of pleasure. . . . Our daughter will always be a victim each time another monster 'enjoys' her videos." Ex. M to GVO at 43-44.

- "I was just a little girl and trusted this person when he said I was pretty and I should dance for the camera . . . Part of this was performing in front of the web cam for a person I was told was a teen aged girl who I found out later was a grown man. . . . I still have nightmares and physical pain." Ex. N to GVO at 14.

- "I have lived my life uncomfortable with men and boys around. I am always conscious of my clothing and making sure no one can see any parts of me. I worry about the pictures of me that are out there and I hate that others see them." Ex. O to GVO at 14.

- "I did not want my family to know any of what happened, because I knew how hurt they would be, and when I finally told them my suspicions were confirmed. All my family could do is cry. . . . The news absolutely crushed them, and they kept asking me if I was hurt. I could not let them know how hurt I really was . . . ." Ex. P to GVO at 5.

- "To steal the innocence of a child or to feed off of that is not acceptable!" Ex. P to GVO at 9.

- "Knowing that some sick person is looking at me on the computer everyday in a way that no one should look at a kid makes me feel violated, it gives me the jeebers, and it makes me want to throw up. . . . I would do anything to make sure that one less kid gets hurt." Ex. P to GVO at 17.

With each new victim, each sexual message, and each explicit image received or downloaded, defendant robbed young girls of their childhood and wreaked trauma in their lives. All of his victims and their families deserve justice. *See United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (dismissing as "erroneous" the "belief

14

that a sentence affects only the life of the criminal and not the lives of his victims"). A Guidelines sentence of 240 months' imprisonment and a ten year term of supervised release will accurately reflect the seriousness of defendant's conduct and appropriately punish it.

### B. Defendant's History and Characteristics, and the Need to Protect the Public and Afford Adequate Deterrence

With respect to defendant's history and characteristics, though defendant has no prior criminal convictions, his recent history is marked by a concerning pattern of apparently attempting to meet his minor victims in-person, and in fact doing so on at least one occasion. As noted above, while communicating with many of his victims, defendant asked about coming to see them in person where they lived, or requesting that they skip school and come meet him. *See, e.g.*, GVO at 2, 7-10. And defendant did in fact meet in-person with three minor victims in Indiana, after exchanging messages about providing them e-cigarettes in return for oral sex. *See id.* at 9-10; PSR at ¶¶ 30-31. Notably, defendant engaged in this conduct *after* being interviewed by law enforcement in 2017 regarding yet another minor girl with whom he was allegedly communicating about drug use and sexual acts. *See* PSR at ¶ 83. And— upon being arrested in 2018 and charged with grooming—defendant again continued to send explicit messages, and solicit explicit images and videos, from various minor girls. *Id.* at ¶ 85; pages 5-7 *supra*. In short, while defendant lacks prior convictions, at least two prior interventions by the criminal justice system failed to serve as "wake-up calls" and deter defendant from continued predatory and criminal conduct.

15

The sentence this Court imposes must do so, and protect other minors and their families.

Defendant has cited a psychosexual evaluation report, dated April 15, 2019, in support of defendant purportedly being of only "average risk to sexually reoffend" and of a "risk level did not dictate incarceration." DVO at 1-2, Bookmark 1 at 1-21; Dkt. 123 at 12-13, Bookmark 1; *see also* PSR at ¶ 120. This report, however, is problematic in several key respects: First, the evaluator was made aware of only *one* of defendant's many minor victims, who was 14-years old at the time. *See* DVO, Bookmark 1 at 11. Thus, the evaluator had no knowledge of defendant's sexually explicit communications with numerous other minors, including girls *younger* than 14. *See id.* Second, the evaluator apparently understood defendant's conduct at issue to be limited to sexual messages and sending photos of his penis, and was thus unaware of defendant soliciting, receiving, and saving child pornography from minor girls. *See id.* Finally, at the time of the evaluation and report, again unbeknownst to the evaluator, defendant was *still offending* with multiple minor victims, in willful violation of the terms of his state bond, *see* pages 6-7 *supra*.

In light of the incomplete and inaccurate information on which the evaluator relied, the government respectfully submits that the findings and recommendations in this report should be given little to no weight. To the contrary, and notwithstanding defendant's stated remorse, defendant's actions—in continuing to exploit minors, even while undergoing a psychosexual examination, facing pending state charges,

and under conditions of state bond—bespeak his risk of recidivism and the need for a sentence sufficient to specifically deter him from further criminal conduct.[4]

The government credits defendant's strong family support, and also acknowledges defendant's physical-health issues (including, most notably, his atopic dermatitis); his mental-health struggles; and his history of substance abuse, all of which do not excuse but do provide context for defendant's crimes. *See* PSR at ¶¶ 93-94, 103-04, 106, 110-12, 114, 137-140, 143-44. While somewhat mitigating, however, these factors are also potentially aggravating, as neither the ongoing support of defendant's family, nor prior treatments and therapies, prevented defendant from victimizing minor after minor in 2018 and 2019. *See, e.g.*, PSR at ¶ 143 (inpatient substance-abuse treatment and five-month aftercare program in 2017); DVO at Bookmarks 6-7 (dermatological and allergists treatment plans from 2000 through 2015), 10-11 (comprehensive treatment plan with detailed therapies in 2016, and care plan including prescription of Dupixent in 2018); *see also United States v. Portman*, 599 F.3d 633, 637 (7th Cir. 2010), *as amended* (Mar. 24, 2010) ("a defendant must show why personal characteristics act as a mitigating, not potentially aggravating, factor in a case where the defendant may not be able to control his sexual impulses").

---

[4] The government also notes that Dr. Gelbort's report, attached to the DVO at Bookmark 17, and defendant's sentencing memo (Dkt. 134) at Bookmark 14, euphemistically characterizes defendant's conduct as "having had inappropriate interactions with underage girls." DVO, Bookmark 17, at 6. The report also recounts defendant's claim that his "interest or motivation in contacting females over social media was not to interact with underage girls but to have the opportunity to interact with females in a way and through a medium where his skin disease would not be the significant limiting factor," as he was "hungry for involvement in an appropriate boy-girl relationship." *Id.* at 6-7. The government submits that defendant's multiple underage victims, and his repeated explicit, manipulative, and at times threatening communications with them, undercut this characterization of defendant's conduct.

Relatedly, while on pretrial release in this case, defendant has violated his conditions of release on *four* separate occasions in 2021 and 2022, by using illicit drugs. *See* PSR at ¶ 10; Dkt. 131-132. His recurrent inability to follow the law (and the Court's orders of release) are of particular concern here, where the Probation Office has noted that defendant will be at a higher risk for recidivism should he again relapse. *See* Rec. at 3.

In sum, while there is mitigation in defendant's personal characteristics and history, it already has been accounted for on the front end through defendant's plea agreement, which capped his sentence at 20 years (notwithstanding what otherwise would have been an advisory range of 360 months to life). *See* PSR at ¶¶ 167-68. With that consideration already in place, defendant's personal history and characteristics do not override either the need to protect the public from his conduct, or the need to deter defendant and other would-be offenders from preying on minors. *See Goldberg*, 491 F.3d at 672 (explaining in child pornography case that "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor" and "[t]he logic of deterrence suggests that the lighter the punishment for [child pornography offenses], the greater the customer demand for it and so the more will be produced"). As such, a sentence of 240 months' imprisonment and 25 years' supervised release remains appropriate.

### C. Need to Provide Defendant with Treatment

The government also requests that defendant's sentence include mental-health, substance-abuse, and sex-offender treatment.[5] The PSR outlines defendant's history of mental-health struggles and substance-abuse issues as well as his willingness to participate in sex-offender treatment while incarcerated and on supervised release. PSR at ¶¶ 110-149. The government supports incarcerating the defendant at a facility in which he can obtain mental-health, substance-abuse, and sex-offender treatment. As discussed further below, the government also supports a ten-year term of supervised release, including conditions requiring participation in mental-health and sex-offender treatment programs, in the hopes of helping defendant become and remain a law-abiding and productive member of society upon his release.

## IV. Restitution

Under the Victims of Trafficking and Violence Protection Act (VTVPA) and the Mandatory Victims Restitution Act (MVRA), the defendant must pay for "the full amount of the victim's losses," which may include the following:

(A) Medical services relating to physical, psychiatric, or psychological care;

(B) Physical and occupational therapy or rehabilitation;

(C) Necessary transportation, temporary housing, and child care expenses;

(D) Lost income;

---

[5] The government is not asking that the Court impose or lengthen a term of imprisonment so that defendant may obtain treatment. *See United States v. Gallagher*, 526 F. App'x 658, 661-64 (7th Cir. 2013).

(E) Reasonable attorneys' fees, as well as other costs incurred; and

(F) Any other relevant losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1)-(3), (c)(2). As noted in its motion for extension of time to compile restitution information (Dkt. 126), the government is still in the process of investigating what restitution is owed. The Court has granted the government's motion to extend the date for determining restitution, pursuant to 18 U.S.C. § 3664(d)(5), to 45 days after sentencing (Dkt. 133).

## V.    Supervised Release Conditions

A supervised-release term of at least five years and up to life must be imposed in this case. The government requests that the Court impose a term of supervised release of ten years, to allow for sufficient supervision of defendant's reintegration into society. A ten-year term is warranted here based on defendant's repeated exploitation of children, including while on pretrial release in Will County; his repeated violations of federal pretrial release; and the need to ensure the safety of the public and facilitate defendant's treatment. The government agrees with, and requests that defendant be required to comply with, the conditions set forth in paragraph 171 of the PSR, all of which will facilitate supervision by the Probation Office, promote defendant's respect for the law, deter him from committing future crimes, support his rehabilitation, and help ensure that he is engaged in lawful pursuits upon release.

## VI.   Conclusion

For the reasons set forth above, the government respectfully requests that the Court sentence defendant to a term of 240 months' imprisonment and impose a ten-year term of supervised release that includes the conditions specified in the PSR.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   /s/ *Ashley A. Chung*
ASHLEY A. CHUNG
CHRISTINE O'NEILL
Assistant United States Attorneys
219 S. Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 697-4089

Dated: May 27, 2022

21